ORIGINAL

# In the United States Court of Federal Claims

No. 15-193C
Filed: August 19, 2015

**FILED**

AUG 19 2015

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * *   *
ROBERT MILGROOM AND NADA       *
MARTL,                         *
                               *
                Plaintiffs,    *
                               *   Pro Se; Res Judicata; Lack of
        v.                     *   Subject Matter Jurisdiction; Due
                               *   Process; Judicial Taking; Tort.
UNITED STATES,                 *
                               *
                Defendant.     *
                               *
* * * * * * * * * * * * *   *
```

**Robert B. Milgroom** and **Nada Martl**, Miami Beach, FL, pro se.

**Douglas G. Edelschick**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the defendant. With him were **Robert E. Kirschman**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Washington, D.C.

**O P I N I O N**

**HORN, J.**

Plaintiffs, Robert B. Milgroom, and Nada Martl, both pro se, filed a complaint together in this court on March 2, 2015. Together, plaintiffs allege violations of the Fourth, Fifth, and Tenth Amendments to the United States Constitution, and claim that the United States District Court for the District of Hawaii took their real property and personal property without just compensation. The co-plaintiffs are seeking $9 million in damages, $8 million for the real property allegedly taken in Hawaii, and $1 million for personal property, allegedly contained within the real property. Plaintiff Martl previously has filed two substantially similar complaints to the instant complaint in this court. The first complaint, filed on May 12, 2009, was dismissed, based on a lack of jurisdiction in this court to review decisions of the United States District Courts. See Martl v. United States, No. 09-299L, 2010 WL 369212, at *2 (Fed. Cl. Jan. 29, 2010) (unreported decision) (Martl I). The second complaint, filed on May 7, 2014, similarly was dismissed based on the lack of jurisdiction of this court to review decisions of the United States District Courts,

as well as under the doctrine of collateral estoppel, barring Ms. Martl from bringing claims that she had already brought before the court in <u>Martl I</u>. <u>See</u> <u>Martl v. United States</u>, No. 14-391L, 2014 WL 1912645, at *2 (Fed. Cl. May 13, 2014) (unreported decision) (<u>Martl II</u>). Plaintiff Martl, joined by plaintiff Milgroom in the instant complaint, again alleges the same causes of action that she alleged in <u>Martl II</u>, based on the alleged wrongful taking of property located in Hawaii.

## FINDINGS OF FACT

Plaintiffs' allegations currently before this court arise out of four prior court proceedings: two lawsuits filed against Mr. Milgroom in the Massachusetts Superior Courts, Mr. Milgroom's bankruptcy proceeding in the United States Bankruptcy Court for the District of Hawaii, and a lawsuit brought against Mr. Milgroom and Ms. Martl in the United States District Court for the District of Hawaii. In April 1987, Mary Valvanis, John Valvanis, and George Valvanis, commenced litigation against Mr. Milgroom in the Superior Court for the County of Norfolk in the Commonwealth of Massachusetts. <u>See</u> <u>generally</u> <u>Valvanis v. Milgroom</u>, No. 87-997, 2007 WL 5954517 (Super. Ct. Mass. July 3, 2007). The Valvanis family alleged that Mr. Milgroom had wrongfully used his influence as an attorney and an accountant for the Valvanis family business to misappropriate real estate interests and business assets. The action was stalled for many years, but moved forward again in the early 2000s.[1] On October 18, 2005, the Superior Court for the County of Norfolk entered a default judgment against Mr. Milgroom after he failed to appear for a pre-trial conference.[2] On July 3, 2007, the Superior Court for the County of Norfolk ordered judgment and damages in favor of the Valvanis family, totaling $3,881,612.14.[3]

---

[1] It is unclear from the record what caused the delay in the Massachusetts Superior Court for the County of Norfolk litigation between the Valvanis family and Mr. Milgroom. In their complaint filed with the United States District Court for the District of Hawaii in 2006, the Valvanis family stated that it was due to an "overcrowded court docket." <u>See</u> Pls.' Compl. at 4, <u>Valvanis v. Martl</u>, No. 06-144 (D. Haw. Mar. 10, 2006).

[2] The Massachusetts Superior Court for the County of Norfolk had ordered Mr. Milgroom to appear for the final pre-trial conference scheduled for October 18, 2005, and warned him that his failure to appear in person or through counsel would result in a default judgment against him. <u>See</u> "Order" at 2, <u>Valvanis v. Milgroom</u>, No. 87-997 (Super. Ct. Mass. Sept. 7, 2005).

[3] Although the Massachusetts Superior Court for the County of Norfolk entered the default against Mr. Milgroom on October 18, 2005, the court did not enter a decision on damages, including the amount of monetary damages, until July 3, 2007. <u>See</u> "Memorandum of Decision on Damages Trial and Order for Judgment" at 19-20, <u>Valvanis v. Milgroom</u>, No. 87-997 (Super. Ct. Mass. July 3, 3007). Following the entry of default against Mr. Milgroom, on or about October 18, 2005, the court held a hearing on the default judgment, but declined to vacate its decision. <u>See id.</u> at 2. The court held an assessment of damages trial in February 2007, and issued its findings in July 2007, awarding the Valvanis family $1,500,000.00 in damages, along with attorneys' costs and fees, and interest on the

In addition to the <u>Valvanis</u> litigation in Massachusetts Superior Court for the County of Norfolk, on January 10, 2002, the D'Ambrosio family, the family of Mr. Milgroom's first wife, filed a suit against Mr. Milgroom in the Superior Court for the County of Suffolk, also in the Commonwealth of Massachusetts. <u>See</u> <u>D'Ambrosio et al. v. Milgroom et al.</u>, No. 02E-0003 (Super. Ct. Mass. May 14, 2007). The D'Ambrosio family alleged that Mr. Milgroom fraudulently used his power of attorney, which he obtained from his terminally ill wife, to change the names on several bank accounts that were intended for his wife's family after she passed away. The D'Ambrosio family alleged that Mr. Milgroom changed the name on the accounts so he could withdraw the money for himself. The Massachusetts Superior Court for the County of Norfolk found that Mr. Milgroom had misappropriated $2,072,101.03 from his deceased wife's estate, even though at the time he was estimated to be worth between $8 and $10 million. <u>See</u> "Findings of Fact, Rulings of Law and Rationale" at 26-29, <u>D'Ambrosio et al. v. Milgroom et al.</u>, No. 02E-0003 (Super. Ct. Mass. May 14, 2007). The Massachusetts Superior Court for the County of Suffolk's decision stated that Mr. Milgroom's actions were "reprehensible and shameful," and that his violation of his deceased wife's trust "can only be characterized as outright mendacious greed." <u>Id.</u> at 29. On July 5, 2007, the Massachusetts Superior Court for the County of Suffolk ordered him to reimburse the funds he had wrongfully taken from his deceased wife's estate. <u>See</u> "Judgment" at 5, <u>D'Ambrosio et al. v. Milgroom et al.</u>, No. 02E-0003 (Super. Ct. Mass. July 5, 2007).

Six months after his first wife passed away, on September 11, 2001, Mr. Milgroom married his co-plaintiff in the above captioned case, Nada Martl.[4] Prior to their marriage, Mr. Milgroom and Ms. Martl worked together in two Florida real estate investment companies. <u>See</u> <u>Valvanis v. Milgroom</u>, 2009 WL 1561575, at *2 n.5. In 2002, Mr. Milgroom began transferring money to Ms. Martl, allegedly pursuant to an agreement prior to their marriage that Mr. Milgroom would give Ms. Martl $5 million if she married him. <u>See id.</u> at

———————————

damages dating back to when the litigation first began in 1987. <u>See id.</u> at 19-20. In total, the Valvanis family was awarded $3,881,612.14. The Valvanis family then brought suit against Mr. Milgroom and Ms. Martl in the United States District Court for the District of Hawaii, <u>see</u> <u>Valvanis v. Milgroom</u>, No. 06-144, 2009 WL 1561575 (D. Haw. June 1, 2009), in order to collect on their judgment after Mr. Milgroom and Ms. Martl allegedly engaged in a scheme to shield their assets from the Massachusetts Superior Court for the County of Norfolk judgment, through a Bankruptcy Court proceeding and a multitude of money and property transfers, as detailed more fully below.

[4] The factual findings in this section of this opinion, which details the relationship between Mr. Milgroom and Ms. Martl, and the multitude of financial transactions between them, are taken from the findings of, and documents submitted to, the United States District Court for the District of Hawaii in the case brought by the Valvanis family against Mr. Milgroom and Ms. Martl. <u>See, e.g.</u>, <u>Valvanis v. Milgroom</u>, 2009 WL 1561575. The District Court based its findings on expert evidence and documents that the Valvanis family submitted to the court, which included bank and tax records for Mr. Milgroom and Ms. Martl. The District Court also based its findings on the uncontroverted statements contained in the plaintiffs' original, first, and second amended complaints.

*2 (The District Court for the District of Hawaii noted that "[i]n lieu of giving Martl $5 million, Milgroom asserts that he added her name to all of his financial accounts."). On March 1, 2002, the same day that Mr. Milgroom was served with the D'Ambrosio complaint alleging that he had misappropriated funds from his first wife's estate, Mr. Milgroom transferred $1.05 million from his bank account, and $950,000.00 from an account jointly held by Mr. Milgroom and Ms. Martl, to Ms. Martl's Bank of America checking account. Ms. Martl then transferred the resulting $2 million to a bank account she had in Germany. See id. at *3. During that same month, Mr. Milgroom sold several of his Treasury Direct securities, totaling over $4.5 million, and transferred those funds to Ms. Martl's German bank account. See id. On April 23, 2002, Ms. Martl transferred an additional $2.7 million, traceable to Mr. Milgroom's funds, into her German bank account.[5] In total, Mr. Milgroom transferred approximately $9 million to Ms. Martl, who subsequently placed the funds in her German bank account. See id.

On August 2, 2002, Mr. Milgroom and Ms. Martl purchased real property in Hawaii for $5.2 million in cash. See id. Mr. Milgroom and Ms. Martl allegedly created title to the Hawaii Property as "tenants by the entirety." See id. at *2. The record from the United States District Court for the District of Hawaii shows that the money used to purchase the Hawaii property came from funds that originated in whole or in substantial part from Mr. Milgroom's accounts.[6] On July 12, 2002, Ms. Martl transferred $6,499,982.00 from her German bank account, the same account into which she had previously deposited the $9 million from Mr. Milgroom, to a checking account she shared with Mr. Milgroom at First Hawaiian Bank. See id. at *3. Mr. Milgroom then drew a check from this account for $7,125,000.00, payable to himself, and deposited it into their joint savings account. These funds were then used to purchase the Hawaii property. See id.

---

[5] Financial documents submitted to the District Court for the District of Hawaii demonstrate that Mr. Milgroom purchased real property and a yacht, then sold them shortly thereafter. The funds from the sales were subsequently deposited into Ms. Martl's German bank account.

[6] In documents submitted to this court, and in her complaint in Martl II, Ms. Martl has asserted that the funds used to purchase the property were entirely hers. In the instant case, Ms. Martl states in her objection to the defendant's Motion to Dismiss, "Ms. Martl purchased the unfinished Hawaii house in August 2002 and completed the construction with her own $6,500,000 that she transferred from her personal bank account in Germany . . . ." In Martl II, Ms. Martl had stated in her complaint, "Plaintiff [Martl] purchased the Property, using her own funds that she transferred from her personal bank account in Germany to her personal bank account in Hawaii . . . ." Financial records from proceedings before the United States District Court for the District of Hawaii in Valvanis v. Milgroom, as detailed above, however, demonstrate that, according to the District Court, the funds used to purchase the Hawaii property "originated in whole or in substantial part from Milgroom's self-estimated $10 million net worth." Valvanis v. Milgroom, 2009 WL 1561575, at *8.

From January through May 2003, Mr. Milgroom continued to transfer assets to Ms. Martl. Mr. Milgroom liquidated $6.3 million in Treasury Direct investments and transferred those funds to Ms. Martl's checking account in the United States. Ms. Martl subsequently transferred $6 million from that account to her bank account in Germany. Mr. Milgroom also transferred his interest in the Hawaii property to Ms. Martl through a quitclaim deed. The deed stated that Ms. Martl paid Mr. Milgroom "consideration in the sum of TEN DOLLARS" for his interest in the property. Valvanis v. Milgroom, 2009 WL 1561575, at *4 (capitalization in original). According to the United States District Court for the District of Hawaii, following the transfer of his property interest to Ms. Martl, Mr. Milgroom had a negative net worth of approximately $2 million.

According to documents filed in the United States District Court for the District of Hawaii, on June 14, 2005, Ms. Martl filed a Complaint for Divorce against Mr. Milgroom in Family Court, Circuit Court of the First Circuit, in the State of Hawaii. In the divorce action, Mr. Milgroom listed no income, no expenses, no debts, and no assets. Ms. Martl similarly listed no income and no expenses, and listed a 2005 BMW vehicle and the Hawaii property as her only assets. On June 15, 2005, Mr. Milgroom filed a "RELEASE OF MARRITAL [sic] INTEREST IN REAL ESTATE LOCATED AT 253 PUUIKENA DRIVE; HONOLULU; HI 96821," (emphasis and capitalization in original), with the Family Court in the Circuit Court of the First Circuit of Hawaii, trying to establish Ms. Martl as the "sole owner of the property." See Docket Number 339, Exhibit 7, Valvanis v. Milgroom, 06-144 (D. Haw. Mar. 5, 2008). Mr. Milgroom purported to release all of his marital interest in the property "for consideration paid," and asserted that "the assets and debts of one spouse shall not be the responsibility of the other spouse." Docket Number 339, Exhibit 7, Valvanis v. Milgroom, 06-144 (D. Haw. Mar. 5, 2008). Two weeks later, on June 28, 2005, a divorce decree was entered. See Martl v. Milgroom, No. 05-1-1994 (Fam. Ct. 1st Cir. Haw. June 27, 2005). According to the United States District Court for the District of Hawaii, after the divorce, Mr. Milgroom and Ms. Martl allegedly continued their relationship. Mr. Milgroom apparently continued residing in the Hawaii property, treating it as his own, and Ms. Martl apparently continued to provide Mr. Milgroom with money to maintain the property and to pay his expenses, including more than $200,000.00 in legal fees. See Valvanis v. Milgroom, 2009 WL 1561575, at *4.

On July 11, 2005, two weeks after the divorce decree was issued, Mr. Milgroom filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii.[7] "Findings of Fact and Conclusions of Law" at 2, In re Robert Bernard Milgroom, No. 05-01833. He did not list the Valvanis family or the D'Ambrosio family as creditors in his bankruptcy petition, despite his ongoing litigation with both families, and, as a result, neither was informed about Mr. Milgroom's bankruptcy proceeding. See id. On September 2, 2005, Mr. Milgroom converted his Chapter 7 case to a Chapter 13 case. See id. at 4. The

---

[7] The factual findings regarding Mr. Milgroom's bankruptcy proceedings are taken from the findings of the United States Bankruptcy Court for the District of Hawaii in its "Findings of Fact and Conclusions of Law," In re Robert Bernard Milgroom, No. 05-01833 (Bankr. D. Haw. May 1, 2006).

Bankruptcy Court later indicated that Mr. Milgroom had converted his case from Chapter 7 to Chapter 13 in order "to avoid investigation and action by the Chapter 7 Trustee" after the Chapter 7 trustee identified fraudulent transfers of property. Id. at 6.

According to the Bankruptcy Court, on November 4, 2005, Mr. Milgroom's counsel in the bankruptcy proceeding sent a Notice of Automatic Stay to the Valvanis family.[8] See id. at 5. This was the first time that the Valvanis family was informed of Mr. Milgroom's bankruptcy proceeding, and they joined the proceeding as creditors after the Massachusetts Superior Court for the County of Norfolk entered a default judgment against Mr. Milgroom in their favor. See id.; see also "Memorandum of Decision on Damages Trial and Order for Judgment" at 1-2, Valvanis v. Milgroom, No. 87-997 (Super. Ct. Mass. July 3, 2007). On November 15, 2005, the Chapter 13 trustee filed an objection to Mr. Milgroom's Chapter 13 Plan, arguing that Mr. Milgroom had made misrepresentations about his financial affairs and was not eligible to be a debtor under Chapter 13. See "Findings of Fact and Conclusions of Law" at 5, In re Robert Bernard Milgroom, No. 05-01833.

The Chapter 13 trustee filed a Motion to Dismiss, arguing that "the Debtor's commencement of the case herein may have been designed to merely defeat pending State Court litigation against him."[9] Id. at 7. The Chapter 13 trustee cited "deliberate failures of the Debtor to disclose information and to identify creditors in his Statement of Financial Affairs and other bankruptcy disclosure papers." Id. at 8. The Valvanis family also objected to the Chapter 13 plan, arguing that Mr. Milgroom filed his bankruptcy case to avoid State court orders in the Massachusetts Superior Court for the County of Norfolk litigation with the Valvanis family, that he filed the Chapter 13 case to avoid revelations under the Chapter 7 case of fraudulent transfers of property, and finally that he failed to

---

[8] It is unclear if the D'Ambrosio family received a similar notification of the automatic stay, however, it does not appear from the record that the D'Ambrosio family participated in Mr. Milgroom's bankruptcy proceeding, or any further litigation with Mr. Milgroom after the Massachusetts Superior Court for the County of Suffolk litigation.

[9] The Massachusetts Superior Court for the County of Suffolk in the D'Ambrosio action also found that the bankruptcy petition was filed to disrupt Mr. Milgroom's Massachusetts Superior Court actions in both the Massachusetts Superior Court for the County of Suffolk and the Massachusetts Superior Court for the County of Norfolk. The Massachusetts Superior Court for the County of Suffolk stated:

> When suit was initiated, Defendant [Mr. Milgroom] frivolously resisted the jurisdiction of this Court, essentially stalling for time. . . . As soon as this suit was filed, Defendant filed a frivolous Petition for Bankruptcy in Hawaii, where he was residing with his new wife. Disposition of the Bankruptcy case further delayed the matter in this Court.

"Findings of Fact, Rulings of Law and Rationale" at 28, D'Ambrosio et al. v. Milgroom et al., No. 02E-0003 (Super. Ct. Mass. May 14, 2007).

disclose his safe deposit box and other assets. See id. at 5-6. The Valvanis family also asked the Bankruptcy Court to appoint an independent trustee to examine the suspicious transfer of real estate (specifically the Hawaii property) from Mr. Milgroom to his recently divorced wife, Ms. Martl. See id. at 6.

On November 29, 2005, the Bankruptcy Court entered an "Amended Order Under Bankruptcy Rule 2004 Upon Oral Examination and Request for Production of Documents of Robert Milgroom." Id. at 7. On March 10, 2006, the Valvanis family filed a Motion to Compel Debtor's Compliance with Rule 2004 Order and for an Award of Sanctions. See id. at 9. The Valvanis family provided uncontroverted evidence that Mr. Milgroom refused to produce financial records and information, refused to produce his laptop computer that he previously had testified contained certain financial information, and refused to sign bank authorizations to turn over financial information. See id. at 9-10. On March 30, 2006, the Bankruptcy Court granted the Order to Compel. See id. at 10. On April 13, 2006, the Valvanis family filed a motion for an Order "Finding Debtor Robert Bernard Milgroom In Contempt of Court," "Awarding Sanctions," "Granting Relief From the Automatic Bankruptcy Stay Nunc Pro Tunc," and "Authorizing the Arrest and Apprehension of Debtor Robert Bernard Milgroom and to Compel Attendance for Examination." Id. at 11. According to the Valvanis family, the motion was "based on compelling evidence that the Debtor Robert Bernard Milgroom left his residence in Honolulu, Hawaii, and fled to Florida to avoid examination and orders of this Court compelling compliance with an outstanding order for his examination under Rule 2004." Id.

On May 1, 2006, the Bankruptcy Court granted the motion and found Mr. Milgroom in contempt of court, stating, "Debtor has failed and refused to comply with the Rule 2004 Order. . . .   He has failed to account for millions of dollars in real estate and financial transactions with his wife . . . or to offer any credible explanation regarding such transactions." Id. at 13. The Bankruptcy Court, however, declined to issue a bench warrant for Mr. Milgroom, stating:

> There is no question that the Debtor is in contempt, that the bankruptcy court has the power to order apprehension and removal of the Debtor, and that the Debtor deserves such treatment. In the circumstances of this case, however, it is more appropriate that the Valvanis Family pursue its remedies in state court. The dismissal of this bankruptcy case was deferred for the sole purpose of permitting the Valvanis Family to complete an examination of the Debtor. . . .   Apprehension and removal of the Debtor is not essential to vindicate the authority of the court; this is particularly so because the Debtor's whereabouts are unknown and the issuance of a bench warrant is therefore likely to be yet another futile act.

Id. at 15. The Bankruptcy Court also granted the Valvanis family relief from the automatic stay nunc pro tunc "as of the date of the Debtor's bankruptcy petition on July 11, 2005, to pursue and/or continue litigation and enforcement action(s) against the Debtor in any state or federal court." "Order Finding Debtor Robert Bernard Milgroom In Contempt of Court" at 2, In re Robert Bernard Milgroom, No. 05-01833 (Bankr. D. Haw. May 1, 2006).

On June 7, 2006, the Bankruptcy Court dismissed the bankruptcy proceeding with prejudice, stating that "no debts which could have been discharged in this bankruptcy case shall be dischargeable in any other bankruptcy case in which Robert Bernard Milgroom shall be a debtor." "Judgment Awarding Sanctions and Dismissing Bankruptcy Case with Prejudice" at 1, In re Robert Bernard Milgroom, No. 05-01833 (Bankr. D. Haw. June 7, 2006). The Bankruptcy Court entered judgment against Mr. Milgroom in the amount of $8,622.97 for the Valvanis family's legal fees. See id.

On March 10, 2006, the Valvanis family filed a complaint against Ms. Martl in the United States District Court for the District of Hawaii. See Valvanis v. Milgroom, 2009 WL 1561575.[10] They asserted an interest in the Hawaii property as creditors to Mr. Milgroom's estate following the entry of a default judgment against Mr. Milgroom in their favor in the Massachusetts Superior Court for the County of Norfolk litigation. See Pls.' Compl. at 18, Valvanis v. Milgroom, No. 06-144 (D. Haw. Mar. 10, 2006). The Valvanis family claimed that "Martl unjustly holds title" of the Hawaii property, and asserted that Mr. Milgroom and Ms. Martl were engaged in an ongoing scheme to defraud Mr. Milgroom's creditors and to shield his assets from the Massachusetts State court judgments against him through fraudulent transfers of money and property. Pls.' Compl. at 17, Valvanis v. Milgroom, No. 06-144 (D. Haw. Mar. 10, 2006). The Valvanis family also asserted that, on January 19, 2006, the Bankruptcy Court "orally granted the Valvanis Family 'relief from the automatic stay *nunc pro tunc* to the extent necessary to foreclose an argument that the orders of the Massachusetts court are void for violation of the automatic stay.'" Pls.' Compl. at 13, Valvanis v. Milgroom, No. 06-144 (D. Haw. Mar. 10, 2006). On May 23, 2006, after the Bankruptcy Court issued an Order relieving the Valvanis family of the automatic stay nunc pro tunc, the Valvanis family filed a first amended complaint in the District Court for the District of Hawaii, which named Mr. Milgroom as a defendant in addition to Ms. Martl. See Valvanis v. Milgroom, 2009 WL 1561575, at *6. On December 14, 2007, the Valvanis family filed a Motion for Leave to File Second Amended Complaint and a Request for Entry of Default against Ms. Martl, based on her failure to answer or otherwise plead to the first amended complaint.[11] See id. The Clerk of Court for the District Court entered a default against Ms. Martl that same day. See id. On January 30, 2008, the Valvanis family filed a second amended complaint in the District Court. See id. The Valvanis family also filed a Motion for Entry of Default Judgment against Mr. Milgroom. See id.

---

[10] Although the decisions of the District Court on Westlaw reflect the caption: "Valvanis v. Milgroom," the court notes that the Mary Valvanis, John Valvanis, and George Valvanis were all listed as plaintiffs on the docket sheet for the District Court and both Robert B. Milgroom and Nada Martl were listed as defendants. Despite the additional parties, the court's citations reflect the caption on Westlaw. The court also notes the docket sheet indicates Nada R. Martl was also known as Nada R. Milgroom.

[11] The record from the United States District Court for the District of Hawaii indicates that during this time, Ms. Martl had left the United States and was residing in Germany. Ms. Martl has asserted various reasons for her absence in prior proceedings, including an illness and inability to return to the United States.

On June 1, 2009, the District Court entered a default judgment against Mr. Milgroom and Ms. Martl, finding that the second amended complaint, and the likelihood of success on the merits of the Valvanis family's claims, were sufficient for a default judgment.[12] See id. at *11. The District Court found that Mr. Milgroom had "engaged in a pattern of conduct of committing numerous violations of court orders and rules as part of an intentional scheme to prevent this action from proceeding to a trial on the merits," and cited "numerous violations of court orders and rules by refusing to produce discovery despite orders compelling his compliance, ignoring all pretrial deadlines, and filing numerous frivolous motions to transfer this action to Florida." Valvanis v. Milgroom, 2009 WL 1561575, at *6. Mr. Milgroom attempted to argue that the violations were due to "his ignorance of court rules and a desire to be on 'equal footing' with Plaintiffs," but the court pointed out that Mr. Milgroom is an "indefinitely suspended attorney and no interpretation of any of the court rules or orders would suggest to a claimant that he can engage in such obstructionist behavior." Id. at *14. Mr. Milgroom also attempted to argue that the default was not due to excusable neglect, but instead caused by "a large-scale conspiracy between Milgroom's and Martl's attorneys, Plaintiffs, and the court to take away the Hawaii Property from Martl." Id. The District Court found these allegations to be "both wholly false and ridiculous" and stated that "Milgroom has nobody to blame but himself

---

[12] On June 1, 2009, the District Court entered two orders one granting the plaintiffs' Motion for Entry of Default Judgment against Mr. Milgroom, and the other granting the plaintiffs' second Motion for Entry of Default Judgment against Ms. Martl. See "Order Granting Plaintiffs' Second Motion for Default Judgment Against Defendant Robert B. Milgroom as to the Second Amended Complaint," Valvanis v. Milgroom, 2009 WL 1561575, at *1; "Order Granting Plaintiffs' Second Motion for Entry of Default Judgment Against Defendant Nada R. Martl as to the First Amended Complaint," Valvanis v. Milgroom, No. 06-144, 2009 WL 1561571, at *1 (D. Haw. June 1, 2009). The District Court entered an individual default against each defendant based on the "very different contexts of default." Valvanis v. Milgroom, 2009 WL 1561575, at *1. The District Court entered default against Ms. Martl because she failed to file an answer to the First Amended Complaint or otherwise participate in the action. See Valvanis v. Milgroom, 2009 WL 1561571, at *1. The District Court entered default against Mr. Milgroom, who had actively participated in the action, "as a sanction for his willful conduct of violating numerous court orders and rules in an attempt to prevent this action from proceeding on the merits." Valvanis v. Milgroom, 2009 WL 1561575, at *1. Previously, on December 30, 2008, the District Court entered default against Mr. Milgroom, concluding that "[t]he court strongly prefers that cases be resolved on the merits, but this case presents extreme circumstances of a defendant who took every effort to derail its efficient adjudication. Milgroom's willful conduct merits entry of default." "Order Entering Default Against Defendant Robert B. Milgroom" at 32, Docket Number 615, Valvanis v. Milgroom, 06-144 (D. Haw. Dec. 30, 2008). The court noted that "[o]n November 13, 2008, the court entered default against Defendant Milgroom after he failed to attend the Final Pretrial Conference in apparent disregard of the court's warnings that his failure to attend 'may result in sanctions, up to and including default being entered against him.'" (internal citation omitted). Id. at 1.

for the entry of default." Id. The District Court also found that Mr. Milgroom did not present any evidence to rebut the plaintiffs' allegations and substantial evidence, and stated that "[t]he evidence presented demonstrates, by clear and convincing evidence, that Milgroom engaged in a willful, elaborate scheme to hide his assets and frustrate his creditors' attempts to collect on his debts."[13] Id. at *17. The District Court entered a judgment against Mr. Milgroom in the amount of $250,000.00 in punitive damages, and imposed a constructive trust over all assets in the Hawaii property to which Mr. Milgroom had any interest. See id. at *18-19.

On June 1, 2009, the District Court also entered a judgment against Ms. Martl in the amount of $4,523,940.29.[14] See Valvanis v. Milgroom, 2009 WL 1561571, at *14. The District Court entered a monetary judgment in the form of a monetary lien and equitable lien on the Hawaii property from the date of the Notice of Adverse Claim that the Valvanis family filed with the State of Hawaii Land Court on March 3, 2006. See id. The District Court imposed a constructive trust over all assets in the Hawaii property that were assigned, transferred, or conveyed by Mr. Milgroom to Ms. Martl, including the Hawaii property. See id. The District Court enjoined Ms. Martl and Mr. Milgroom from attempting to sell or transfer interest in the Hawaii property,[15] and appointed a receiver to liquidate the Hawaii property. See id. On November 18, 2009, the Hawaii property was sold at auction for $4,075,000.00, and the proceeds of the sale were credited to the Valvanis family. See "Final Receiver's Report" at 2-3, Valvanis v. Milgroom, No. 06-144 (D. Haw. Dec. 10, 2009).

On May 12, 2009, prior to entry of judgment in the District Court case, Ms. Martl filed her first complaint, Martl I, in the United States Court of Federal Claims, pro se,

---

[13] In the D'Ambrosio action, the Massachusetts Superior Court for the County of Suffolk came to a similar conclusion, finding that "Defendant transferred funds, rightfully belonging to Lillian's [Mr. Milgroom's first wife] estate and the Trusts she created, to his new wife as part of a fraudulent divorce in Hawaii specifically to remove those assets from the jurisdiction of this Court." "Findings of Fact, Rulings of Law and Rationale" at 28, D'Ambrosio et al. v. Milgroom et al., No. 02E-0003 (Super. Ct. Mass. May 14, 2007).

[14] The District Court noted that to prevent possible duplicative recovery, any recovery the Valvanis family had in the Massachusetts Superior Court for the County of Norfolk against Mr. Milgroom was to be taken from the monetary judgment entered here against Ms. Martl, based on the finding that Ms. Martl had received substantial sums of money from Mr. Milgroom. See Valvanis v. Milgroom, 2009 WL 1561571, at *13.

[15] Ms. Martl previously had attempted to sell the Hawaii property, and in 2006 listed it at $6.5 million, even though the property was valued at $8 million. Ms. Martl was unable to sell the property due to the lis pendens put on the property by the United States District Court for the District of Hawaii, which notified any potential buyers that the property was involved in a lawsuit. See Valvanis v. Milgroom, 529 F. Supp. 2d 1206, 1211 (D. Haw. 2007) (affirming the District Court magistrate judge's decision to impose a lis pendens on the Hawaii property).

asserting a claim for money damages for the alleged wrongful taking of her property in Hawaii by Judge J. Michael Seabright of the United States District Court for the District of Hawaii. See generally Martl I, 2010 WL 369212. Ms. Martl claimed she was in Germany for health reasons, and did not participate in the court action regarding the Hawaii property. Ms. Martl alleged that no "fraudulent transfers" occurred between her and Mr. Milgroom, and argued that the Valvanis family "were unable to produce any evidence that Mr. Milgroom owed them money prior to my divorce . . . . Mr. Milgroom had none of their property and did not owe them any money prior to my divorce, he could not have made 'fraudulent transfers' of their property to me." Pl.'s Compl. at 15, Martl I. Ms. Martl further stated, "I don't see any legal reason why that case against me should have been allowed to continue, unless there was substantial **Public Corruption** that prevented the Court from following the law." Pl.'s Compl. at 16-17, Martl I (emphasis in original).

The Court of Federal Claims dismissed Ms. Martl's complaint in Martl I, stating that despite her repeated assertions that she was not bringing a collateral attack against the judgment entered by the District Court for the District of Hawaii, "there is no other interpretation of her suit. Her complaint is replete with allegations of wrongdoing and errors of law committed by the district court to the exclusion of any other averred basis for relief." Martl I, 2010 WL 369212, at *2. The Court of Federal Claims found that it did not have jurisdiction to review the actions of a District Court, and dismissed the plaintiff's complaint, without prejudice. See id.

On May 7, 2014, Ms. Martl filed a second complaint, also pro se, in the United States Court of Federal Claims which is substantially similar to the present complaint. Ms. Martl alleged violations of her rights under the Fourth, Fifth, and Tenth Amendments to the United States Constitution, and requested money damages for an allegedly unlawful taking of her property in Hawaii.[16] See Pl.'s Compl. at 5-6, Martl II. The Court of Federal Claims also dismissed the Martl II complaint, finding that the court lacked jurisdiction over Ms. Martl's claims, and that her claims were barred by the doctrine of collateral estoppel. See Martl II, 2014 WL 1912645, at *2. In addition, the court stated that it lacked jurisdiction to entertain claims under the Fourth and Tenth Amendments because those amendments do not mandate the payment of money damages. See id. Further, the court stated that it lacked jurisdiction under the Due Process Clause of the Fifth Amendment because that clause does not mandate the payment of money damages. See id. The court also stated

---

[16] In the case currently before this court, Ms. Martl and Mr. Milgroom likewise allege violations of the Fourth, Fifth, and Tenth Amendments to the United States Constitution based on the alleged wrongful taking of the Hawaii property, using much of the same language used by Ms. Martl in her complaint in Martl II. For example, in her complaint in Martl II, Ms. Martl wrote under the heading "**Tenth Amendment to the U.S. Constitution**," "Defendant did not have Jurisdiction to determine ownership of Plaintiff's privately owned real estate that was located in Hawaii." (emphasis in original). Pl.'s Compl. at 7, Martl II. In the instant complaint, currently before this court, under the heading "**Amendment X**," plaintiffs wrote, "[t]here is no provision in the U.S. Constitution that grants jurisdiction to Defendant to determine ownership of privately owned real estate that is located wholly within a State." Id. (emphasis in original).

that, while it has jurisdiction to consider claims under the Takings Clause of the Fifth Amendment, it may only exercise jurisdiction when the plaintiff concedes that the government's actions in taking the property were legitimate, and that in her complaint, however, Ms. Martl contended that the government's actions were not legitimate. See id. The court further found that Ms. Martl was attempting to challenge the District Court for the District of Hawaii's decision, and stated that it lacked jurisdiction to review decisions of District Courts. See id. Finally, the court in Martl II stated that the Court of Federal Claims had already ruled on Ms. Martl's claims in Martl I, and that she had a full and fair opportunity to litigate those claims in her first action before the court. See id. The court found that Ms. Martl was barred by the doctrine of collateral estoppel from bringing her claims before the Court of Federal Claims for a second time. See id. On May 13, 2014, the court dismissed Ms. Martl's complaint, without prejudice. See id. at *3.

In the current complaint filed in this court, plaintiff Nada Martl is now joined by co-plaintiff Robert Milgroom. They allege violations of the Fourth, Fifth, and Tenth Amendments to the Constitution, and assert that the District Court for the District of Hawaii violated the Bankruptcy Court's automatic stay, therefore, rendering the District Court for the District of Hawaii's decision regarding the Hawaii property void. Plaintiffs claim that in the District Court for the District of Hawaii action, the Valvanis family filed a First Amended Complaint adding Mr. Milgroom as a defendant on May 23, 2006,[17] and that the District Court's decision is void because these actions violated the automatic stay. Plaintiffs further allege that, in their complaint, the Valvanis family asked the District Court to "determine ownership of personally owned real estate that was located wholly within the State of Hawaii." Plaintiffs assert that the District Court "did not have legal jurisdiction to take Martl's said real estate, supervise its auction and distribution of the proceeds." Plaintiffs argue that "[t]he State of Hawaii had exclusive jurisdiction to auction privately owned real estate located wholly within its State," and that "[t]he U.S. Constitution did not grant jurisdiction to Defendant to auction privately owned real estate located wholly within a State." Plaintiffs claim that "Defendant's willful violation of the automatic stay gives the Court of Federal Claims jurisdiction under **Section 362(h)** of the Bankruptcy Code to determine the amount of actual damages, including costs and attorneys' fees, punitive and other damages including damages for emotional distress, to be paid to Plaintiffs." (emphasis in original). Plaintiffs also assert that "filing this Complaint in the U.S. Court of Federal Claims is not a collateral attack of the Defendant's null and void Judgments." Plaintiffs request "recovery of actual damages, including costs and attorney's fees, punitive and other damages including emotional distress, and such other and further relief as the Court deems just and proper."[18]

---

[17] Plaintiffs also list the date May 26, 2006 as the date that the Valvanis family filed their first amended complaint in the District Court for the District of Hawaii. The record indicates that the first amended complaint was filed on May 23, 2006.

[18] On August 12, 2015, plaintiffs submitted another filing, a one page Reply to Defendant's Response in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint. This filing, however, appears to have been untimely, as plaintiffs' reply was due on August 10, 2015. Plaintiffs' appear to have dated the document as filed on August 10, 2015,

**DISCUSSION**

The court recognizes that plaintiff Martl is proceeding pro se, without the assistance of counsel, and that plaintiff Milgroom is technically proceeding pro se, although he is an indefinitely suspended attorney.[19] When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a

---

however the filing was not received by this court until August 12, 2015.  More significantly, the Reply asserts essentially the same plaintiffs had alleged in their previous filings in this court, and adds nothing new for the court's consideration.

[19] Mr. Milgroom was indefinitely suspended as an attorney in the Commonwealth of Massachusetts in 1998 for unethical conduct and for intentionally depriving a client of $100,000.00 in funds, which he had misappropriated.  See In re Robert B. Milgroom, No. BD-96-037 (Mass. Feb. 26, 1998) (affirming Mr. Milgroom's indefinite suspension from the Commonwealth of Massachusetts' state bar).  The court notes that in the District Court's "Order Entering Default Against Defendant Robert B. Milgroom," the District Court noted that:

> In this Order, the court focuses only on Milgroom's actions that have significantly prejudiced Plaintiffs and/or delayed trial. The court is aware, however, of Milgroom's myriad other violations of court orders and Local Rules. Milgroom, a disbarred attorney, affirmed to the court that he would follow the Local Rules, but nonetheless filed repetitive motions and documents without permission, sent numerous faxes to court chambers despite being instructed on the proper way to file documents, and even asserted that he represents other Defendants despite his status as a disbarred attorney.

"Order Entering Default Against Defendant Robert B. Milgroom" at 4 n.4, Docket Number 615, Valvanis v. Milgroom, 06-144 (D. Haw. Dec. 30, 2008).  Nonetheless, in this litigation, Mr. Milgroom argues that "the Official Commonwealth of Massachusetts Records show that **Mr. Milgroom was never disbarred!**" (emphasis in original).

plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

As described above, prior to the instant complaint, Ms. Martl previously had filed two complaints in this court alleging that the United States District Court for the District of Hawaii wrongfully took her property. In both prior proceedings in the Court of Federal Claims, the court found that it did not have jurisdiction over Ms. Martl's claims. See Martl I, 2010 WL 369212, at *2; Martl II, 2014 WL 1912645, at *2. The court in Martl II also found that Ms. Martl's second complaint was barred by the doctrine of collateral estoppel. The complaint filed in Martl II is substantially similar to the instant complaint, and alleges the same causes of action under the Fourth, Fifth, and Tenth Amendments to the United States Constitution. This court reaches the same conclusion as the court in Martl I and especially in Martl II. Ms. Martl's claims have been previously litigated in this court and are barred by the doctrine of issue preclusion.[20] The United States Court of Appeals for the Federal Circuit has stated that in this circuit: "Claim preclusion requires (1) an identity of parties or their privies, (2) a final judgment on the merits of the first suit, and (3) the later claim to be based on the same set of transactional facts as the first claim such that the later claim should have been litigated in the prior case." Bowers Inv. Co., LLC v. United States, 695 F.3d 1380, 1384 (Fed. Cir. 2012) (citing Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003)).

In addition, the United States Court of Appeals for the Federal Circuit has indicated that "[o]n procedural issues not unique to this circuit's exclusive jurisdiction, we apply the law of the regional circuit. . . ." Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed.

---

[20] Res judicata, also known as collateral estoppel, has been interpreted to include both claim preclusion and issue preclusion. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). Although the terms are often used interchangeably, claim preclusion serves to foreclose "'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit,'" whereas issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49, reh'g denied, 533 U.S. 968 (2001)). For the purposes of clarity, the court will address each in turn because Ms. Martl asserts both the same claims and the same issues as those that she asserted in Martl I and Martl II.

Cir. 2003); see also Aspex Eyewear, Inc. v. Zenni Optical Inc., 713 F.3d 1377, 1380 (Fed. Cir. 2013). Because the Ms. Martl's allegations are based on a United States District Court's decision from the District of Hawaii, the court also refers to the law of the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit has stated that "[c]laim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." Rein v. Providian Financial Corp., 270 F.3d 895, 899 (9th Cir. 2001).

In the instant case, the parties, Ms. Martl and the United States, remain identical to the parties in both Martl I and Martl II, with only the addition of plaintiff Mr. Milgroom to the case currently before the court.[21] The current case also is based on the same set of transactional facts raised in Martl I and Martl II, which involved the alleged taking of the Hawaii property by the District Court for the District of Hawaii. In the instant complaint, the plaintiffs, including Ms. Martl, try to argue that the two previous dismissals were not final judgments on the merits, and had "nothing to do with the facts," and, therefore, the complaint cannot be barred by claim preclusion. Plaintiffs, including Ms. Martl, are correct in stating that under the Rules of the United States Court of Federal Claims (RCFC), a dismissal for a lack of jurisdiction is not a final judgment on the merits. See RCFC 41(b) (2015) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—*except one for lack of jurisdiction* . . . operates as an adjudication on the merits.") (emphasis added); see also Lowe v. United States, 79 Fed. Cl. 218, 229 (2007) ("Unless the judgment ordering dismissal specifies otherwise, however, the mere *dismissal* of a claim for lack of subject matter jurisdiction does not operate as an adjudication of that claim on the merits.") (emphasis in original). A jurisdictional determination by the court, however, may still have a preclusive effect to bar those matters that have been actually litigated in previous actions if the plaintiff fails to cure the jurisdictional defect in a subsequent court action. See Lowe v. United States, 79 Fed. Cl. at 230 ("[A] prior dismissal *does* preclude the same action based on the same facts unless the jurisdictional flaw that necessitated dismissal of the first suit has been cured.") (emphasis in original). Ms. Martl has failed to cure the jurisdictional defect in her claims before this court. Ms. Martl, who was a party to the two previous actions in this court, continues to allege identical claims to those that she alleged in prior proceedings in the Court of Federal Claims. Therefore, even though the previous dismissals of Ms. Martl's claims were not "an adjudication on the merits" as defined in RCFC 41(b), Ms. Martl is precluded from again bringing those claims before this court, a court of competent jurisdiction, which she has chosen for all three of her lawsuits, because she has not

---

[21] The court notes that the United States was not a party to the District Court case, however, collateral estoppel is available as a defense by the United States, even though the United States was not a party to the original suit, assuming the party to be bound by the preclusion had a full and fair opportunity to litigate the precluded issue. See Parklane Hoisery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979) ("Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.").

asserted any new claims, and because she has failed to cure the jurisdictional defects identified in Martl I and Martl II.

Ms. Martl's claims also are barred by the doctrine of issue preclusion. As articulated by the Supreme Court, the rule of issue preclusion precludes a party from re-litigating an issue that was "litigated and resolved in a valid court determination essential to the prior judgment." New Hampshire v. Maine, 532 U.S. at 748-49. In addition, "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980); see also United States v. Mendoza, 464 U.S. 154, 158 (1984) ("Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The United States Supreme Court has explained that issue preclusion guards against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–54 (1979) (footnote omitted). The Supreme Court indicated that:

> Issue preclusion bars successive litigation of "an issue of fact or law" that "is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." Restatement (Second) of Judgments § 27 (1980) (hereinafter Restatement). If a judgment does not depend on a given determination, relitigation of that determination is not precluded. Id., § 27, Comment h.

Bobby v. Bies, 556 U.S. 825, 834 (2009).[22] The United States Court of Appeals for the Federal Circuit has directed that:

> Collateral estoppel is generally appropriate if "(1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action."

---

[22] The Supreme Court has explained that, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).

Biafora v. United States, 773 F.3d 1326, 1333 (Fed. Cir. 2014) (quoting Shell Petroleum, Inc. v. United States, 319 F.3d 1334, 1338 (Fed. Cir. 2003)). [23] Similarly, according to the Ninth Circuit, issue preclusion applies when:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.

Paulo v. Holder, 669 F.3d 911, 917 (9th Cir. 2011) (citing Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000)).

Under either approach, regarding the first element of issue preclusion, the issues presented in the instant complaint is identical to the issues raised in Ms. Martl's complaints previously filed in this court in Martl I and Martl II. As discussed above, at the heart of each of Ms. Martl's complaints filed in this court is the alleged wrongful taking of the Hawaii property by the District Court for the District of Hawaii, and Ms. Martl continues to allege nearly identical causes of action based on the District Court's actions. While Ms. Martl has asserted different arguments in support of her claim of an alleged wrongful taking of property by the District Court for the District of Hawaii, first asserting in Martl I that she had nothing to do with Mr. Milgroom's litigations, then in Martl II arguing that the Hawaii property belonged solely to her and not to Mr. Milgroom, and finally in the instant complaint that the District Court's decision was void due to an alleged violation of an automatic stay,[24] the issue of the court's jurisdiction over her claims remains the same. The first element of issue preclusion is satisfied.

Regarding the second element of issue preclusion, although the previous dismissals of Ms. Martl's complaints were not "final judgments on the merits" as defined in RCFC 41(b), as discussed above, those dismissals still have a preclusive effect when the new complaint fails to cure the jurisdictional defect identified in the first dismissal. See Lowe v. United States, 79 Fed. Cl. at 230. Ms. Martl has failed to cure the jurisdictional

---

[23] As noted above, collateral estoppel is available as a defense by the United States, even though the United States was not a party to the District Court case, assuming the party to be bound by the preclusion had a full and fair opportunity to litigate the precluded issue. See Parklane Hoisery Co. v. Shore, 439 U.S. at 326 n.4.

[24] The court notes that plaintiffs' argument that the District Court violated the Bankruptcy Court's automatic also fails on the merits because the record demonstrates that there was no violation of the Bankruptcy Court's automatic stay. The automatic stay was lifted on May 1, 2006, and the court altered the date of relief from the automatic stay nunc pro tunc to July 11, 2005. The Hawaii District Court action against Mr. Milgroom did not begin until May 23, 2006 when the Valvanis family filed their First Amended Complaint naming Mr. Milgroom as a defendant, which was well after the date of relief from the automatic stay, both in terms of when the Bankruptcy Court lifted the stay, and when the date of relief was altered nunc pro tunc.

defect identified in both <u>Martl I</u> and <u>Martl II</u>, and, therefore, those dismissals to satisfy the final judgment requirement of issue preclusion.

Finally, Ms. Martl was a party to <u>Martl I</u> and <u>Martl II</u>. Ms. Martl has filed each complaint <u>pro se</u>, and fully participated in both actions. Ms. Martl claims that she was not in the United States from December 1, 2005 until October 14, 2009, and argues that she "could not have had her 'day in court' in any U.S. Federal or State Court during that period." The record shows, however, that Ms. Martl initiated <u>Martl I</u>, <u>pro se</u>, in the Court of Federal Claims on May 12, 2009, and at that time she was given a full and fair opportunity to present and argue the issues raised in her complaint. Ms. Martl fully participated in the action, filing a motion for an extension of time, an amended complaint, another amended complaint, a third amended complaint, with an attached Memorandum in Support of Jurisdiction, and a response to the defendant's Motion to Dismiss. Any alleged inability to fully litigate a claim due to absence rests completely with Ms. Martl, who chose to commence a litigation and had the responsibility to meet court orders and deadlines. Ms. Martl took another opportunity to litigate her claims in <u>Martl II</u>, which she also filed <u>pro se</u>, but she failed to assert any claims over which the court had jurisdiction. Therefore, Ms. Martl definitively was a party to the previous actions which are the basis for this court's determination on the doctrine of issue preclusion, and fully participated in the cases. Therefore, the final element of issue preclusion is satisfied.

Ms. Martl, twice previously in this court, had a full and fair opportunity to litigate the issue of subject matter jurisdiction. Ms. Martl argues in her current response to the defendant's Motion to Dismiss that the issues she presents in the instant complaint have not been litigated. Ms. Martl does not identify which issues have not been litigated, and provides no further argument in support of her position. Ms. Martl has not identified any significant procedural limitations, and did not present any evidence that an effective litigation was limited by the nature or relationship of the parties. The record also provides no evidence of such limitations. Ms. Martl had an incentive to fully litigate the issue of jurisdiction, particularly in her second action filed in the Court of Federal Claims after her first action was dismissed due to a lack of jurisdiction. Even now, in her third effort to litigate these claims, Ms. Martl does not argue any new issues and provides no evidence to suggest why she has not already had a full and fair opportunity to be heard. Ms. Martl has twice had an opportunity to litigate the issue of jurisdiction in <u>Martl I</u> and <u>Martl II</u>. Under the doctrine of <u>res judicata</u>, including both claim preclusion and issue preclusion, Ms. Martl must be barred from bringing her claims before this court for a third time.

Despite his apparent continuous and intense involvement in Ms. Martl's affairs and claims previously filed in the Court of Federal Claims, and although he has been involved and included in earlier related, relevant state and federal litigation, Mr. Milgroom has not previously filed a complaint in this court or another federal court which alleges the same claims or issues alleged in the instant complaint. Therefore, Mr. Milgroom's suit in this court is not barred by the doctrines of <u>res judicata</u>.[25] As explained below, however, this

---

[25] See <u>Taylor v. Sturgell</u>, 553 U.S. at 892 ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-

court lacks jurisdiction over all of the claims alleged in Ms. Martl and Mr. Milgroom's current complaint, and, therefore, the above captioned complaint must be dismissed.[26]

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Mata v. United States, 118 Fed. Cl. 92, 95-96 (2014), recons. denied, 2015 WL 1000820 (Fed. Cl. Mar. 4, 2015); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion

rooted historic tradition that everyone should have his own day in court.'" (citing Richards v. Jefferson County, 517 U.S. 793, 798 (1996))).

[26] Although this court dismisses Ms. Martl's claims as barred by res judicata, the court refers to the plaintiffs' claims jointly to demonstrate that even if Ms. Martl's case were not so barred, her claims also must be dismissed for lack of jurisdiction in this court.

19

declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343

20

(Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404–05 (1994).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. See Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004). The court wrote:

The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in

21

which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d at 1301; see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, "the statute and regulations must be such that they '"can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."'" Roberts v. United States, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (quoting United States v. White Mountain Apache Tribe, 537 U.S. at 472 (quoting United States v. Testan, 424 U.S. 392, 400 (1976))); see also United States v. Navajo Nation, 556 U.S. at 290; United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See Navajo Nation II, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

Plaintiffs attempt to assert causes of action under the Fourth, Fifth, and Tenth Amendments to the United States Constitution. Although plaintiffs allege a violation of the Fourth Amendment, the exact nature of the violation is unclear from their complaint. Plaintiffs state only that the Fourth Amendment "Protects people against unreasonable searches and seizures," but make no other statements or allegations regarding their Fourth Amendment claim. This court, however, is without jurisdiction to hear claims

alleging violations of the Fourth Amendment. See LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing Shaw v. United States, 8 Cl. Ct. 796, 800 (1985))); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997))), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2010) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing LeBlanc v. United States, 50 F.3d 1025 (Fed. Cir. 1995))), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (citing Milas v. United States, 42 Fed. Cl. 704, 710 (finding that the Sixth Amendment is not money-mandating), aff'd, 217 F.3d 854 (Fed. Cir. 1999)); Hernandez v. United States, 93 Fed. Cl. 193, 198 (2010) ("Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth, and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated."); Fry v. United States, 72 Fed. Cl. 500, 507 (2006) ("As a matter of law, the Fourth Amendment's prohibition on unreasonable search and seizure and the Due Process Clause of the Fifth Amendment are not money-mandating." (citation omitted)). This court, therefore, lacks jurisdiction over plaintiffs' Fourth Amendment claim.

Plaintiffs also allege that the District Court violated the Tenth Amendment. The exact nature of plaintiffs' Tenth Amendment claim also is unclear from their complaint, but plaintiffs appear to allege that the District Court violated the Tenth Amendment by exercising jurisdiction over the Hawaii property. Plaintiffs appear to argue that the Hawaii State courts have sole jurisdiction over property located within the state. Plaintiffs appear to assert that the District Court overreached into an area of state jurisdiction and violated the Tenth Amendment when it liquidated the Hawaii property. This court, however, is without jurisdiction to hear claims under the Tenth Amendment because it is not money mandating. "Nothing in the language of [the Tenth Amendment] 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" Fry v. United States, 72 Fed. Cl. at 508 (quoting United States v. Mitchell, 463 U.S. at 216).

To the extent that plaintiffs allege violations of their due process rights under the Fifth Amendment, the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider those claims. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)), cert. denied, 134 S. Ct. 259 (2013); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed.

Cir. 2006); <u>Collins v. United States</u>, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), <u>reh'g denied</u> (Fed. Cir. 1995); <u>Mullenberg v. United States</u>, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); <u>Murray v. United States</u>, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); <u>Harper v. United States</u>, 104 Fed. Cl. 287, 291 n.5 (2012); <u>Hampel v. United States</u>, 97 Fed. Cl. 235, 238, <u>aff'd</u>, 429 F. App'x 995 (Fed. Cir. 2011); <u>McCullough v. United States</u>, 76 Fed. Cl. 1, 4 (2006) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."), <u>appeal dismissed</u>, 236 F. App'x 615 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir.), <u>cert. denied</u>, 552 U.S. 1050 (2007). Due process claims "must be heard in District Court." <u>Kam–Almaz v. United States</u>, 96 Fed. Cl. 84, 89 (2011) (citing <u>Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States</u>, 458 F.3d at 1334), <u>aff'd</u>, 682 F.3d 1364 (Fed. Cir. 2012); <u>see also Hampel v. United States</u>, 97 Fed. Cl. at 238.

Plaintiffs Martl and Milgroom also appear to allege that the District Court for the District of Hawaii's actions in liquidating the Hawaii property amount to a wrongful "judicial taking" in violation of the Fifth Amendment of the United States Constitution. To the extent that plaintiffs are asking this court to review the decisions or actions of the United States District Court for the District of Hawaii or the United States Bankruptcy Court for the District of Hawaii, however, this court does not have jurisdiction to do so. Plaintiffs allege in their complaint that they "were legally wronged and damaged by Defendant's willful violations of the automatic stay" when the District Court for the District of Hawaii ordered the Hawaii property to be liquidated to satisfy its judgment in <u>Valvanis v. Milgroom</u>, No. 06-144, 2009 WL 1561575 (D. Haw. Jun. 1, 2009).[27] Plaintiffs assert that they filed the instant complaint "to show that Defendant's judgments were absolutely void, as a matter of law." Although plaintiffs argue that "filing this Complaint in the U.S. Court of Federal Claims is not a collateral attack of the Defendant's null and void Judgments," there is no other manner of interpreting their claims.

This court is without jurisdiction to review the alleged taking by the District Court, a judicial taking, <u>see Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection et al.</u>, 560 U.S. 702 (2010), because review in this case of such a taking "would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake." <u>Shinnecock Indian Nation v. United States</u>, 782

---

[27] The court notes that plaintiffs' allegations of a "taking" by the United States District Court for the District of Hawaii also would fail on the merits because plaintiffs have failed to demonstrate that the District Court took their private property for public use, and, therefore, have failed to satisfy the very definition of a taking under a Fifth Amendment constitutional taking. <u>See</u> U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The record demonstrates that the property was liquidated to satisfy a judgment in a private court action, and there is no evidence, nor any suggestion, that this taking was in any way related to a public use.

F.3d 1345, 1352 (Fed. Cir. 2015); see also Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."). Just as the Court of Federal Claims does not have jurisdiction to review the decisions of the United States District Courts, the Court of Federal Claims also does not have jurisdiction to review decisions of the United States Bankruptcy Courts. See Allustiarte v. United States, 256 F.3d 1349, 1351 (Fed. Cir. 2001) (holding that the Court of Federal Claims does not have jurisdiction to entertain judicial takings claims against federal bankruptcy courts because "[s]uch a determination would require the court to scrutinize the actions of the bankruptcy trustees and courts"), cert. denied, 534 U.S. 1042 (2001); Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals.").

Plaintiffs also assert that this court is the proper forum for their complaint because "Defendant's judgments were absolutely void, as a matter of law, leaving **nothing** to appeal; therefore, it did not require an appeal prior to filing in this Court of Federal Claims." (emphasis in original). However, "[p]ermitting parties aggrieved by the decision of Article III tribunals to challenge the merits of those decisions in the Court of Federal Claims would circumvent the statutorily defined appellate process and severely undercut the orderly resolution of claims." Shinnecock Indian Nation v. United States, 782 F.3d at 1353. Contrary to plaintiffs' assertions, the only proper forum for their challenge of the District Court's judgment was in the United States Court of Appeals for the Ninth Circuit. See 28 U.S.C. § 1291 (2012) ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). Neither plaintiffs' failure to appeal or plaintiffs' alleged, but unsupported, claim of inability to appeal the District Court for the District of Hawaii's decision supplies this court with jurisdiction over their claim. As stated above, this court is without jurisdiction to review the decisions of the District Courts, including claims alleging a "judicial taking," and, therefore, plaintiffs' claims under the Takings Clause of the Fifth Amendment must be dismissed.

Although plaintiffs' complaint does not appear to assert a cause of action in tort, plaintiffs' request for damages for "emotional distress" may be an effort to allege some aspect of tortious conduct. This court, however, does not possess jurisdiction over claims that sound in tort. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. at 3; Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885

(Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, any of plaintiffs' claims that sound in tort, likewise, must be dismissed.

In the above captioned case, this court dismisses the complaint filed by both plaintiffs for a lack of jurisdiction. With respect to the claims brought by Ms. Martl, the court is dismissing those claims as barred by all forms of res judicata. Furthermore, the court is dismissing both plaintiffs' case for a lack of jurisdiction because plaintiffs' claims asserted under the Fourth and Tenth Amendments, as well as the Due Process Clause of the Fifth Amendment to the United States Constitution are not money mandating. Moreover, this court also does not have jurisdiction to review actions sounding in tort, and, therefore, those claims must also be dismissed. Finally, to the extent that plaintiffs try to assert a judicial takings claim under the Takings Clause of the Fifth Amendment, this court does not have jurisdiction to review the decisions or actions of the United States District Courts or Bankruptcy Courts, and, therefore, those claims must be dismissed.

As a final note, plaintiffs also previously filed documents containing interrogatories and requests for admission with this court on June 10, 2015 and June 30, 2015. This court found that the filings were improper because "this court has not ordered filing of these documents and discovery has not begun."[28] Furthermore, plaintiffs' requests for admissions are now moot, given the court's dismissal of plaintiffs' complaint. The court also denies plaintiffs' July 22, 2015 Motion for Leave to File an Amended Complaint. Plaintiffs' proposed amended complaint, submitted with their Motion for Leave to File an Amended Complaint, fails to assert a cause of action that would provide this court with jurisdiction over their claims, and only serves to assert different arguments in support of their claim that the District Court wrongfully took their property. In their proposed amended complaint, plaintiffs argue that the District Court for the District of Hawaii violated "the State of Hawaii's 'tenants by the entirety' law," and claim that under this law, Ms. Martl is exempt from any of Mr. Milgroom's debts, and that the District Court could not collect on Mr. Milgroom's debts by seizing Ms. Martl's property. The plaintiffs also assert that Mr. Milgroom's transfer of his property interest to Ms. Martl was not fraudulent, and instead was to "payoff any debts owed to Ms. Martl before paying Valvanis." These are not claims properly within the jurisdiction of this court. As discussed above, the court does not have jurisdiction to review decisions of the United States District Courts, and further arguments attempting to convince this court that the District Court for the District of Hawaii's actions were wrong do nothing to establish that this court has jurisdiction over those claims. As there is no basis for jurisdiction over any of either plaintiff's claims, the court finds that any attempt to amend the complaint would be futile. Plaintiffs' Motion for Leave to File an Amended Complaint is denied.

Plaintiffs' complaint in this court was filed in a frivolous attempt to re-litigate issues raised and decided in multiple other courts. The plaintiffs together have engaged in a

---

[28] On July 13, 2015, defendant's attorneys responded to the plaintiffs' Motion Requesting Limited Admissions, stating that they sent plaintiffs a letter "objecting to the discovery requests as premature" and stated that they "will not respond to plaintiffs' motion any further unless the Court directs otherwise."

calculated scheme to try to evade the decisions of those courts. Mr. Milgroom and Ms. Martl repeatedly have asked for the same relief and have deliberately wasted judicial resources, with repetitive and seriatim attempts to undo the consequences of their own improper behavior as found by the United States District Court for the District of Hawaii and the United States Bankruptcy Court for the District of Hawaii. Neither plaintiff should be allowed to file further complaints based on the same subject matter as raised in the above captioned case in this court without prior permission from a judge of this court.

## CONCLUSION

Defendant's motion to dismiss, as against both plaintiffs, for lack of subject matter jurisdiction is, hereby, **GRANTED**. Plaintiffs' complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion. Costs to the defendant.

**IT IS SO ORDERED.**

MARIAN BLANK HORN
Judge